379 S.E.2d 493

STATE of West Virginia ex rel.
Wayne Allen WILSON

v.

Jerry C. HEDRICK, Warden West
Virginia Penitentiary.

No. 18694.

Supreme Court of Appeals of
West Virginia.

March 27, 1989.

Franklin D. Cleckley, Morgantown, for appellant.

Edward L. Bullman, Office of Atty. Gen., Charleston, for appellee.

PER CURIAM:

This is an appeal by Wayne Allen Wilson from an order of the Circuit Court of Fayette County in a habeas corpus proceeding. The appellant, who plead guilty to first degree murder, is presently serving a life sentence, with a recommendation of mercy, in the West Virginia Penitentiary. In the habeas corpus proceeding, he contended that his guilty plea to the charge of first degree murder was not voluntarily and intelligently given. He also contended that he was denied effective assistance of counsel. The circuit court found that the appellant's contentions were without merit and denied his petition. In the present proceeding, the appellant claims that the circuit court's ruling was erroneous. After reviewing the record, this Court disagrees, and, accordingly, affirms the decision of the circuit court.

On January 8, 1985, the appellant was indicted by a grand jury in Fayette County for first degree murder. In subsequent proceedings relating to the charge, he was represented by Fred A. Jesser, III, who became concerned about his mental competency. In Mr. Jesser's opinion, the appellant's behavior was "deteriorating." Mr. Jesser, therefore, moved that the appellant be examined by a psychiatrist to determine his competency to stand trial. He also sought a determination as to whether the appellant was criminally responsible at the time of the commission of the alleged murder. Pursuant to Mr. Jesser's motion, the appellant was examined by psychiatrists at Weston State Hospital, who found that he was competent to stand trial. The psychiatrist also determined that the appellant was criminally responsible at the time of the incident giving rise to the charge against him. Mr. Jesser, who was not wholly satisfied by the report prepared at Weston State Hospital, procured an independent psychiatric examination. The independent psychiatrist indicated that while the appellant was very frightened about the possibility of incarceration, and while he was concerned about his family, he was competent to stand trial and assist in his defense. Dr. Hasan concluded that the appellant was more psychosomatic than anything else.

Mr. Jesser entered into plea bargain negotiations with the prosecuting attorney of Fayette County. As a result of negotiations the appellant agreed to plead guilty to murder in the first degree if the State would recommend mercy. On July 8, 1985, the appellant, pursuant to the plea bargain agreement, appeared in the circuit court and plead guilty to first degree murder.

In the present proceeding, as in his habeas corpus proceeding, the appellant's first contention is that his plea of guilty to first degree murder was not voluntarily and intelligently given. He specifically claims that he was not fully informed of the nature of the charges against him prior to entering his plea.

■ In West Virginia the burden of establishing that a guilty plea was involuntarily entered rests upon the party challenging the plea. As stated in syllabus point 3 of *State ex rel. Clancy v. Coiner*, 154 W.Va. 857, 179 S.E.2d 726 (1971): "The burden of proving that a plea was involuntarily made rests upon the pleader."

■ In the present case, the trial court, before taking the appellant's plea, informed him that first degree murder was the unlawful "taking of a human life done feloniously, intentionally, willfully, with a malicious intent, and done deliberately, and not just on the spur of the moment but with some forethought." The court questioned the appellant to determine whether he understood the elements of the offense. From the fact that the appellant stated that he shot the victim with the pistol while in a beer garden, it appears that he was clearly aware that he had taken a human life, and from the overall proceedings it is clear that he was informed that he was charged with committing a criminal offense and faced the possibility of life imprisonment. Although the appellant's responses indicated that he was upset, particularly with the possibility of going to the penitentiary, he was given an opportunity to confer with his counsel during the proceedings.

According to defense counsel's testimony during the habeas corpus proceeding, counsel had discussed with the appellant the various elements of the charges prior to the plea proceeding. He specifically discussed the difference between first degree murder, second degree murder, manslaughter, and voluntary manslaughter. He investigated the possibility of showing lack of premeditation, and he discussed this with the appellant.

Given the nature of the record, this Court cannot conclude that the appellant has met his burden of proving that he was not fully informed of the nature of the charges against him. Two psychiatric examinations indicated that he was competent to stand trial and thus capable of understanding the charges, and there is extensive evidence that he was informed of the charges both before and during the plea proceeding.

The appellant next challenges the psychiatric evidence that he was mentally compe-

tent to make an intelligent admission of guilt. He claims that the transcript of the plea proceeding is replete with indications that he was not in fact competent.

In West Virginia the test for competency to plead guilty to a criminal charge is the same as the test for mental competency to stand trial. *State ex rel. Kessick v. Bordenkircher,* 170 W.Va. 331, 294 S.E.2d 134 (1982). That test is set forth in syllabus point 2 of *State v. Arnold,* 159 W.Va. 158, 219 S.E.2d 922 (1975), as follows:

> To be competent to stand trial, a defendant must exhibit a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational, as well as factual, understanding of the proceedings against him.

While it is not clear that the psychiatric findings that the appellant was competent to stand trial had been reduced to writing at the time of the plea proceeding, those findings, in the form of the report of the appellant's own psychiatrist, are in the record presently before the Court and support the circuit court's ruling on competency.

It is clear that the appellant understood what was going on at the plea proceeding, that he faced incarceration possibly for life, and that the possible consequences grew out of the shooting at the beer garden. It appears that he was upset, but he was able to consult with his attorney during the proceeding.

Overall, this Court believes that a fair reading of the record shows that the appellant was mentally competent at the plea proceeding. The psychiatric evidence failed to show prior mental incompetency. The appellant demonstrated a present ability to consult with his attorney, and a fair reading of the plea record shows that he had a reasonable degree of rational understanding of the basis of the charges against him. The Court believes that under syllabus point 2 of *State v. Arnold, supra,* he was competent to stand trial or to plead guilty.

The appellant also claims that he was not afforded effective assistance of counsel. He claims that his attorney failed to advise him of the elements of the offense to which he was pleading and that the record shows that he first became aware of the aforethought requirement of first degree murder at the plea hearing. He also claims that his attorney failed to request a competency hearing and that his attorney led him to expect that he would be incarcerated in the Huttonsville Correctional Center.

As previously indicated, defense counsel testified during the habeas corpus proceeding that he explored with the appellant all the possible crimes of which he could be convicted, as well as the elements of the those crimes. He rather clearly did take steps to obtain an expert psychiatric assessment of the appellant's competency to stand trial. Finally, the record of the plea proceeding itself shows that the plea bargain agreement included an undertaking by the prosecutor to recommend that the appellant be sent to Huttonsville Correctional Center, but with the understanding that the matter was in the hands of the Department of Corrections rather than with the court. There is no indication other than the appellant's own assertions that he was led to believe that he could be sent only to Huttonsville. At the plea proceeding itself defense counsel stated, in the appellant's presence:

> Your Honor, part of the plea bargain was that the order would recite that the prosecutor recommended he be placed at Huttonsville, knowing full well that's a matter with the Department of Corrections and not with this Court.

The judge then specifically stated to the appellant that any recommendation was not binding on the corrections authorities and that the corrections authorities could place the appellant in any penitentiary in the State of West Virginia. The appellant indicated that he understood that and that it was all right. He added, however, "I'm still scared."

This Court believes that the appellant has failed to establish incompetency on the part of his counsel.

For the reasons stated, the judgment of the Circuit Court of Fayette County is affirmed.

Affirmed.