551 S.E.2d 711

**STATE of West Virginia ex rel. Donald R. FARMER, Jr., Petitioner Below, Appellant,**

v.

**George TRENT, Warden, Respondent Below, Appellee.**

No. 28399.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 10, 2001.

Decided July 10, 2001.

Noel M. Olivero, Esq., Sammons, Olivero & Paraschos, Huntington, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Barbara H. Allen, Managing Deputy Attorney General, Charleston, for Appellee.

McGRAW, Chief Justice.

Appellant Donald Farmer, Jr., appeals the refusal of the Circuit Court of Mingo County to grant habeas corpus relief on his claims that (1) he was not informed, at the time he pled guilty to charges of first-degree murder and robbery with the use of a firearm, of the various constitutional rights incident to standing trial, as required by W. Va. R.Crim. P. 11(c); and (2) the trial court failed to obtain a sufficient factual basis for his guilty plea to first-degree murder as required by W. Va. R.Crim. P. 11(f), in that he never expressly stated on the record that he intended to kill the victim. We affirm the circuit court, concluding that Farmer failed to show that he was prejudiced by the trial court's alleged violations of Rule 11, as required by our recent holding in *State ex rel. Vernatter v. Warden,* 207 W.Va. 11, 528 S.E.2d 207 (1999).

## I.

## BACKGROUND

Farmer was indicted by the Mingo County Grand Jury in September 1990 on charges of murder and robbery, in connection with allegations that he shot and killed 70–year–old Gertrude Huff in the course of robbing her of approximately $3,000. There was evidence that in carrying out the robbery in concert with his uncle, Ballard Johnson, Farmer shot his victim in the back, and then later shot her two more times in the face as she lay on the ground. Farmer later entered into a written plea agreement with prosecutors, where he agreed to plead guilty to both first-degree murder, W. Va.Code § 61–2–1 (1987), and robbery with the use of a firearm, W. Va. Code § 61–2–12 (1961), on condition that he obtain a recommendation of mercy with respect on the murder charge, so as to permit him to eventually become eligible for parole,[1] and that the State would recommend a sentence of 20 years in connection with the robbery offense.

Farmer tendered his guilty pleas to the two offenses at a hearing conducted on November 21, 1990. At a subsequent hearing held on July 2, 1991, Farmer was sentenced to life with mercy on the charge of first-degree murder, with sentencing on the robbery offense being deferred pending his testimony at the trial of his co-defendant. After Johnson was tried and convicted on similar charges, which resulted in the imposition of two consecutive life sentences, a second sentencing hearing was conducted on November 15, 1991, where the State, in conformity with an amendment to the original plea agreement, recommended that Farmer receive a 15–year sentence on the robbery charge. After hearing testimony from Trooper John Zirkle of the West Virginia State Police regarding the facts of the crime, the trial court again deferred sentencing pending the completion of a presentencing report. At the final sentencing hearing, held on February 19, 1992, the State again recommended a 15–year sentence; however, after citing the nature of Farmer's conduct and the fact that his co-defendant, who had not fired the fatal shots, had received two consecutive life sentences, the court imposed a sentence of 24 years, to be served consecutive to the previous life sentence.

Farmer later sought post-conviction habeas relief and, following the appointment of counsel, eventually filed a second amended habeas petition which set forth two broad grounds for relief. First, he alleged that his guilty pleas were "involuntary," and in doing so effectively presented three distinct claims: (1) the circuit court failed to inform him of his constitutional trial rights and adequately question him regarding the voluntariness of his plea as required by Criminal Procedure Rule 11(c) & (d); (2) the court failed to inform him of his right to withdraw his plea in the event that the recommended sentence was rejected, as required by W. Va. R.Crim. P. 11(e)(2); and (3) the court failed to ascertain a factual basis for Farmer's guilty plea to first-degree murder in accord with W. Va.

1. *See* W. Va.Code § 62–3–15.

R.Crim. P. 11(f), in that he never admitted to having specific intent to kill Mrs. Huff. As an additional ground for relief, Farmer contended that he had not received effective assistance of counsel at the time he tendered his guilty pleas.

During an evidentiary hearing held incident to the habeas corpus petition on July 21, 1997, Farmer testified, among other things, that his lawyers had failed to inform him of the various rights that he would waive by pleading guilty:

Q Before you pled guilty did you understand all the rights that you would give up if you pled guilty?

A No, I did not.

Q Before the plea hearing, and this would have been in November, did your attorneys tell you about all the rights you would give up if you pled guilty, or do you recall?

A No.

Farmer also testified that he was told by his lawyers what to say at the plea hearing, that he did not understand what he was being told by the plea hearing judge, and that contrary to statements made during the plea hearing, his lawyers had neither read nor explained to him the substance of a "Petition to Enter Guilty Plea" that had been tendered to the circuit court at the time he pled guilty, which set forth in detail the rights he would be waiving by entering a guilty plea.[2]

When Teresa McCune, who had represented Farmer at his plea hearing, was later called to testify at the evidentiary hearing, the issue arose as to whether Farmer had effectively waived the attorney-client privilege by asserting deficiencies in counsel's representation. When Farmer, after consultation with his habeas counsel, expressly refused to permit Ms. McCune to testify to facts pertaining to her representation, the court made clear that it would not permit the petitioner to go forward with any claims that

called into question the advice given him by trial counsel:

THE COURT: The problem here ... is that Mr. Farmer wants to get up and testify that he answered certain questions that are in the court transcript at the time of his plea, but that he was told to give answers that he was assisted during the course of the proceeding by saying whether to say yes or no to the court's questions and that, in effect, he was placed under duress because of the threat of receiving life without mercy in order to what amounted to false answers in his—at the time of his plea proceeding and now he has directly accused Ms. McCune of telling him to do so. What Mr. Farmer wants to do is put all those issues into evidence and then put everyone in an impossible position— he's putting the state in an impossible position of rebutting the argument. No one but Ms. McCune and Mr. Farmer were privy to those conversations and Mr. Farmer wants to paint them in one light and Ms. McCune may very well testify consistent with that or she may testify inconsistent with that, but, certainly, he has questioned the official transcript and has offered an explanation of why it says what is says. He wants to open the door and put evidence in the record as far as this writ is concerned and then close the door so no one can rebut it. Who else in the world can rebut what Mr. Farmer has testified to here today except for Ms. McCune. . . .

The court went on to state succinctly, "I'm going to tell you now that I'm going to give none of Mr. Farmer's testimony credibility with regard to those issues if Ms. McCune is not allowed to testify in this matter."

In response, Farmer's counsel suggested that "the other possible solution is this case can be decided on the first issue, which is whether the plea was knowing, intelligent and voluntary with respect to the advice that Mr. Farmer was given or not given *during*

---

2. The document in question, which was signed on each page by Farmer, explained, among other things, the right to counsel; the right to plead not guilty; the right to trial by jury; the presumption of innocence; the burden upon the prosecution to prove guilt beyond a reasonable doubt; the right of a defendant to testify at trial; the right to confront and cross-examine prosecution witnesses; the right of a defendant to call witnesses on his or her own behalf; and the right to appeal.

*the plea hearing.*" (Emphasis added.) The court then gave Farmer the choice of either permitting Ms. McCune to testify, or withdrawing those claims which implicated her representation. Farmer chose the latter course, which elicited the following statement from the habeas court:

> THE COURT: All right. If Mr. Farmer intends to claim privilege, then this court is not going to consider any of the prior testimony of Ms. McCune and is not going to consider any of the grounds that would be associated with her testimony . . . and, frankly, to make it very plain, any issue relative to the representations of Ms. McCune, ineffective assistance of counsel, her advice, misrepresentation of or him being placed under duress or threats of a higher sentence or matter[s] along these lines will not be considered if Ms. McCune is not going to testify in this matter, fully, completely, openly and honestly.

The court then asked Farmer's habeas counsel to state the issues remaining for decision, which drew the following response:

> MR. OLIVERO: Your Honor, the best I can characterize it, from the petition which I have previously filed, Mr. Farmer's claim would be whether or not his plea to the charges could have been voluntary where the court did not inform him that he could not withdraw his plea of guilty if the court chose not to follow the recommended sentence and where the court did not inform Mr. Farmer, alternatively, at the sentencing hearing that it was not going to follow the recommended sentence and afford him an opportunity to withdraw his plea and where the court, during the plea hearing, did not inform Mr. Farmer that he had the right to plead not guilty and where the court did not inform Mr. Farmer at the plea hearing he had the right to be tried by a jury and at that trial he had the right to assistance of counsel, where the court did not advise the petitioner, Mr. Farmer, he had the right to confront and cross[-]examine witnesses and he had the right against compelled self-incrimination and where the court did not inform him that he had the right to call witnesses on his own behalf at trial; where the court did not inform him that if he pled guilty he would

be giving up his right to a trial; where the petitioner was not advised by the court during the plea hearing when he was placed under oath in the presence of his attorney that any answer he gave could later be used against him in a prosecution of perjury or false swearing, and, finally, your Honor, where the court did not recite the complete terms of the plea agreement on the record during the plea hearing . . . These would be the issues your Honor. *I believe they can be resolved by looking at State v. Cabell, [176 W.Va. 272, 342 S.E.2d 240 (1986)], looking at Rule 11, and reviewing the transcript.*

> The only other final issue would be whether or not there was a sufficient factual basis for the court's acceptance of the guilty plea at the plea hearing, *which I believe can also be resolved, you Honor, by looking at the transcript and considering the case law* we have cited in conjunction with that issue.

(Emphasis added.)

The habeas court issued its final order on October 12, 1999, which granted relief on the narrow claim that Farmer was not informed of his right to withdraw his guilty plea to robbery in the event the trial court failed to follow the sentencing recommendation. The court ordered specific performance of the terms of the plea agreement in accord with syllabus point two of *State v. Stone,* 200 W.Va. 125, 488 S.E.2d 400 (1997), and later resentenced Farmer to fifteen years on the robbery charge. All other claims for relief were denied, with the court finding, in part, that the underlying guilty pleas "were entered into freely, voluntarily, intelligently, knowingly and competently." Farmer now appeals, arguing that the lower court erred in failing to grant relief on his claims regarding shortcomings in the Rule 11 colloquy undertaken by the trial court.

## II.

### DISCUSSION

■ At the outset, we must stress the fact that the present case arises under the West Virginia Post–Conviction Habeas Corpus Act,

W. Va.Code §§ 53–4A–1 to –11, as a collateral challenge to a criminal conviction. This Court has frequently stressed that the standard for obtaining habeas corpus relief differs markedly from that which applies to secure a reversal on direct appeal: "A habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." Syl. pt. 4, *State ex rel. McMannis v. Mohn,* 163 W.Va. 129, 254 S.E.2d 805 (1979), *cert. denied,* 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 112 (1983); *see also* Syl. pt. 9, *State ex rel. Azeez v. Mangum,* 195 W.Va. 163, 465 S.E.2d 163 (1995); *State ex rel. Phillips v. Legursky,* 187 W.Va. 607, 420 S.E.2d 743 (1992).

▆▆▆ This limitation on the right to collaterally challenge a criminal conviction has special force in instances where the conviction rests upon a guilty plea, where the concern for finality is particularly strong. Thus, as we recently stated in syllabus point 10 of *State ex rel. Vernatter v. Warden,* 207 W.Va. 11, 528 S.E.2d 207 (1999):

> A habeas petitioner may successfully challenge a guilty-plea conviction based upon an alleged violation of Rule 11 of the West Virginia Rules of Criminal Procedure only by establishing that the violation constituted a constitutional or jurisdictional error; or by showing that the error resulted in a complete miscarriage of justice, or in a proceeding inconsistent with the rudimentary demands of fair procedure. Moreover, the petitioner must also demonstrate that he was prejudiced in that he was unaware of the consequences of his plea, and, if properly advised, would not have pleaded guilty.

The Court likewise made clear in *Vernatter* that "a prisoner may not collaterally attack a guilty plea under Rule 11 where 'all that is shown is a failure to comply with the formal requirements of the Rule.'" 207 W.Va. at 20,

528 S.E.2d at 216 (quoting *United States v. Timmreck,* 441 U.S. 780, 785, 99 S.Ct. 2085, 2088, 60 L.Ed.2d 634 (1979)); *see also Thomas v. Leverette,* 161 W.Va. 224, 227, 239 S.E.2d 500, 502 (1977) (pointing out that *Call v. McKenzie,* 159 W.Va. 191, 220 S.E.2d 665 (1975), the precursor to Rule 11, merely "suggested specific inquiries that should be made of the defendant at the time his guilty plea is taken in order to forestall future attack on the guilty plea by way of a habeas corpus proceeding. *Call* acknowledged that the failure of the trial court to follow each suggested inquiry would not invalidate the guilty plea."). In simpler terms, a failure to comply with Rule 11 is not by necessary implication a failure to comply with due process. *See Haase v. United States,* 800 F.2d 123, 127 (7th Cir.1986) ("Rule 11 is a device for protecting [the voluntariness of a guilty plea,] but the scope of the Rule does not equal the more limited scope of the constitutional right."); *Salazar v. Warden, Utah State Prison,* 852 P.2d 988, 991–92 (Utah 1993).

▆▆▆ Farmer therefore faces a significant hurdle in his quest to overturn his guilty pleas, since at this juncture he must demonstrate not only that the circuit court erred in the procedures it employed in accepting such pleas, but also that these defects contributed to a deprivation of due process in that the guilty pleas were in fact not knowing and voluntary. A habeas petitioner seeking to overturn his guilty plea bears the burden of persuasion with respect to the voluntariness of the plea. *See* syl. pt. 3, *State ex rel. Clancy v. Coiner,* 154 W.Va. 857, 179 S.E.2d 726 (1971) ("The burden of proving that a plea was involuntarily made rests upon the pleader."); *accord* syl. pt. 1, *State ex rel. Wilson v. Hedrick,* 180 W.Va. 689, 379 S.E.2d 493 (1989) (per curiam).

▆▆▆ Farmer's first substantive claim [3] is that his guilty pleas were "involuntary" be-

---

**3.** Farmer initially launches a procedural argument, asserting that the lower court failed to properly address this claim in its final order, as required by syllabus point one of *State ex rel. Watson v. Hill,* 200 W.Va. 201, 488 S.E.2d 476 (1997) ("West Virginia Code section 53–4A–7(c) (1994) requires a circuit court denying or granting relief in a habeas corpus proceeding to make

specific findings of fact and conclusions of law relating to each contention advanced by the petitioner, and to state the grounds upon which the matter was determined."), and Rule 9(c) of the Rules Governing Post–Conviction Habeas Corpus Proceedings in West Virginia. While we agree that the circuit court's order could have been more clear and comprehensive with respect to its

cause the plea colloquy was deficient under both W. Va. R.Crim. P. 11(c),[4] given the trial court's failure to directly inform him of the various constitutional rights he would waive by pleading guilty, and Rule 11(d),[5] due to the court having, among other things, posed an excessive number of "yes/no" questions.[6] While Farmer frames this issue in terms of whether his pleas were voluntary,[7] a review of the transcript of the evidentiary hearing clearly reveals that, in the end, he has done no more than challenge the plea hearing court's technical compliance with Rule 11(c) & (d). By acceding to the constraints imposed by the habeas court on account of his

treatment of the substantive issues raised in this case, we see no reason to remand the present case for entry of a more appropriate order given the inescapable result we reach as a consequence of Farmer having narrowed the scope of his Rule 11 claims at the conclusion of the evidentiary hearing. *See Vernatter,* 207 W.Va. at 20, 528 S.E.2d at 216.

4.  Rule 11(c) provides:

     (c) *Advice to Defendant.*—Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
     (1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and
     (2) If the defendant is not represented by an attorney, that the defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant; and
     (3) That the defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that the defendant has the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right against compelled self-incrimination, and the right to call witnesses; and
     (4) That if a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to a trial; and
     (5) If the court intends to question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant has pleaded, that the defendant's answers may later be used against the defendant in a prosecution for perjury or false swearing.

5.  Rule 11(d) provides:

refusal to permit his trial counsel to testify, which limitation is not challenged here, Farmer effectively precluded himself from demonstrating that his plea was truly rendered involuntary by the alleged shortcomings in the Rule 11 colloquy. Indeed, Farmer's tactical choice to rely exclusively upon the existing record made the necessary showing of prejudice altogether impossible, since whether a guilty plea is voluntary depends upon information known by the defendant at the time the plea was entered, including what was learned out of court. *See Henderson v. Morgan,* 426 U.S. 637, 647, 96

     (d) *Ensuring That the Plea Is Voluntary.*— The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the state and the defendant or the defendant's attorney.

6.  In *Call v. McKenzie,* 159 W.Va. 191, 197, 220 S.E.2d 665, 670 (1975), we stated that "it is preferable that questions calling for 'yes' or 'no' answers be avoided."

7.  To the extent that Farmer is, apart from the alleged violations of Rule 11, also asserting that the record insufficiently demonstrates the voluntariness of his pleas, we must reject such contention. In *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the United States Supreme Court found constitutional error in a trial court's acceptance of a guilty plea without having created a record affirmatively showing an effective waiver of certain basic constitutional rights. 395 U.S. at 242, 89 S.Ct. at 1712. As the *Boykin* Court observed, the surrender of such important rights "cannot [be] presume[d] ... from a silent record." *Id.* at 242–43, 89 S.Ct. at 1712. In accord with *Boykin,* this Court in syllabus point one of *Riley v. Ziegler,* 161 W.Va. 290, 241 S.E.2d 813 (1978), stated that "[w]hen a conviction rests upon a plea of guilty, the record must affirmatively show that the plea was intelligently and voluntarily made with an awareness of the nature of the charge to which the plea is offered and the consequences of the plea." Examining the record in its entirety, which includes representations by both Farmer and his lawyer during the plea hearing that the defendant had been informed of his various constitutional trial rights, we find that it affirmatively shows that the pleas at issue in this case were voluntary and intelligent under the totality of the circumstances.

S.Ct. 2253, 2258, 49 L.Ed.2d 108 (1976) (explanation of elements of charge either by trial judge or defense counsel sufficient); *cf.* syl. pt. 2, *State v. Sims*, 162 W.Va. 212, 248 S.E.2d 834 (1978) ("The controlling test as to the voluntariness of a guilty plea, when it is attacked either on a direct appeal or in a habeas corpus proceeding on grounds that fall within those on which counsel might reasonably be expected to advise, is the competency of the advice given by counsel."). Farmer's claims regarding deficiencies in the trial court's colloquy under Rule 11(c) & (d) therefore fail because he has made no attempt to demonstrate that he was prejudiced to the extent that the court's errors rendered his plea involuntary.

■ Farmer's second claim, that his guilty plea to first-degree murder was involuntary as a result of the trial court's failure to ascertain a factual basis for such charge as required by W. Va. R.Crim. P. 11(f),[8] likewise fails under *Vernatter's* limited scope of review. As we explained in *State v. Bennett*, 179 W.Va. 464, 370 S.E.2d 120 (1988), "one purpose of the requirement of Rule 11(f) is to 'protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.' " *Id.* at 467, 370 S.E.2d at 123 (quoting *McCarthy v. United States*, 394 U.S. 459, 467, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418, 426 (1969)). While such purpose is obviously laudatory, this Court has never deemed it constitutionally necessary

for a trial court to undertake the inquiry required by Rule 11(f). And other courts appear in general agreement that absent special circumstances " 'there is no constitutional requirement that a trial judge inquire into the factual basis of a plea.' " *United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (en banc), *cert. denied,* 511 U.S. 1054, 114 S.Ct. 1614, 128 L.Ed.2d 341 (1994) (citation omitted).[9] Rather, only when the defendant claims his factual innocence while pleading guilty, a situation not present in this case, is a court constitutionally required to undertake such a procedure. *See North Carolina v. Alford*, 400 U.S. 25, 37–39, 91 S.Ct. 160, 167–68, 27 L.Ed.2d 162 (1970); *see also Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir.1983); *Willett v. Georgia*, 608 F.2d 538, 540–41 (5th Cir.1979).

■ Thus, absent the special circumstance of a defendant claiming factual innocence while pleading guilty to a criminal charge, the requirement of Rule 11(f) that a trial court make an inquiry into the factual basis of the defendant's plea is not constitutionally mandated. It therefore follows under our reasoning in *Vernatter* that a simple violation of Rule 11(f) may not, standing alone and without a showing of prejudice, serve as a predicate for collateral relief. And since Farmer has done no more than assert that the trial court's plea colloquy failed to meet the formal requirements of Rule 11(f), without otherwise attempting to demonstrate his plea was thereby rendered involuntary as a consequence,[10] we find no

---

8. Rule 11(f) provides that "[n]otwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."

9. *See also Meyers v. Gillis*, 93 F.3d 1147, 1151 (3d Cir.1996) ("Put simply, the Due Process Clause of the Fourteenth Amendment to the United States Constitution does not require an on-the-record development of the factual basis supporting a guilty plea before entry of the plea ....."); *Higgason v. Clark*, 984 F.2d 203, 207–08 (7th Cir.1993) (indicating that Supreme Court precedent "does not imply that the factual-basis requirement of Fed.R.Crim.P. 11(f) and its state-law counterparts comes from the Constitution"); *Rodriguez v. Ricketts*, 777 F.2d 527, 528 (9th Cir.1985) ("We conclude that the due process clause does not impose on a state court the duty

to establish a factual basis for a guilty plea absent special circumstances."); *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir.1984) ("[D]ue process does not mandate a factual basis inquiry by state courts.").

10. While Farmer brings to our attention the fact that he never admitted having specific intent to kill his victim, he has presented no evidence showing that his plea to first-degree murder was unknowing or involuntary in this regard. The self-imposed limitation of relying solely upon the existing record obviously foreclosed such an approach. We note, moreover, that during the plea hearing the trial court informed him that under first-degree murder "[t]here must be a specific intent to kill .... It could not have been accidental, it could not have been justified, there must be a specific intent to kill here." Such evidence in the record belies any notion that Farmer was

error in the circuit court's rejection of this claim.

We must stress that our treatment of Farmer's Rule 11 claims is determined by the procedural posture of this case, since it arises as a post-conviction habeas corpus challenge. The Court in no way means to suggest that the requirements of Rule 11 are any less mandatory for the trial courts of this jurisdiction. On direct appeal of a denial of a motion to withdraw a guilty plea, a trial court's failure to adhere to the rule continues to require reversal unless it can be shown that the violation amounted to harmless error. *See* W. Va. R.Crim. P. 11(h) ("Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."). And as we recently stated in syllabus point two, in part, of *State v. Valentine*, 208 W.Va. 513, 541 S.E.2d 603 (2000), harmless error in the context of Rule 11 may be found only "when the factual evidence is clear that no substantial rights of the defendant were disregarded." *See also* syl. pt. 7, *State ex rel. Brewer v. Starcher*, 195 W.Va. 185, 465 S.E.2d 185 (1995). Moreover, like the United States Supreme Court similarly made clear in *United States v. Timmreck*, *supra*, we do not foreclose the possibility that collateral relief "would be available if a violation of Rule 11 occurred in the context of other aggravating circumstances." 441 U.S. at 784–85, 99 S.Ct. at 2088. Indeed, our cases appear to support relief in such situations. *E.g., Pugh v. Leverette*, 169 W.Va. 223, 233, 286 S.E.2d 415, 421 (1982) (voiding conviction on basis of deficiencies in plea colloquy, where evidence indicated that defendant's "plea was made under oppressive and coercive circumstances"). But no such aggravating circumstances have been presented in this case.

### III.

### CONCLUSION

For the reasons stated, the judgment of the Circuit Court of Mingo County is affirmed.

Affirmed.

prejudiced by the claimed defects in the trial

Justice MAYNARD, deeming himself disqualified, did not participate in the decision of this case.

Judge DARRELL PRATT, sitting by temporary assignment.

ALBRIGHT, Justice, concurring in part and dissenting in part.

I concur in the judgment of the majority that the denial below of the Appellant's application for a writ of habeas corpus should be affirmed, but not for all the reasons assigned by the opinion of the Court. The refusal of the Appellant to testify or allow his counsel to testify to the underlying circumstances deprived the trial court of any factual basis upon which to act. Moreover, the totality of the circumstances, as revealed by the resulting truncated record and the considerable delay between the time the contested guilty plea was entered and the petition for this writ was filed, persuades me that the majority is correct in affirming the judgment of the lower court on this application.

I respectfully dissent from the conclusion that this Court should alter its position, enunciated forcefully in Rule 11, W. Va. R.Crim. P., that the trial court must independently ascertain that a plea of guilty is both voluntarily and knowingly made simply because the Supreme Court of the United States has now lowered its expectations in that regard. I respectfully suggest that the Constitution of this State mandates faithful adherence of Rule 11, even if the supreme law of the land no longer does.

For like reason, I also dissent from Syllabus Point 2 of the majority's opinion. I believe it invites disregard for the spirit and letter of Rule 11 and the principles of fairness and justice which underlie both Rule 11 and the substantive provisions of our West Virginia Bill of Rights, the provisions of which mirror the protections intended to be preserved by the hallowed Bill of Rights attached to the Constitution of the United States as a condition of its ratification.

court's inquiry into the factual basis of his plea.

I am authorized to state that Justice STARCHER joins in this concurring and dissenting opinion.